NICHOLAS DIAFARIO *vs.* COMMISSIONER OF CORRECTION
& another.[1]

Suffolk.    September 14, 1976. — December 20, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Imprisonment.   Moot Question.   Practice, Civil,* Moot case.

Under G. L. c. 127, § 129, a prisoner serving consecutive sentences
which were aggregated for purposes of computing good conduct
credits was not entitled to be given separate termination dates for
each sentence, but was to be given a single termination date for the
combined sentences.  [549-551]
Under G. L. c. 127, § 129, it was proper to aggregate a prisoner's con-
secutive sentences and fix a single termination date by deducting
appropriate good conduct credits even though the second sentence
was one not subject to reduction for good conduct.  [551-552]
This court expressed its opinion on the lawfulness of an official inter-
pretation of G. L. c. 127, § 129, in computing good conduct reduc-
tions from the plaintiff's sentence even though the plaintiff had been
discharged from prison before his appeal could be heard.  [552-553]

CIVIL ACTION commenced in the Superior Court on De-
cember 13, 1974.

The case was heard by *Good,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Margaret Hayman* (*Anne Hoffman* with her) for the
plaintiff.

*John P. Corbett,* Assistant Attorney General, for the
Commissioner of Correction & another.

KAPLAN, J.   While incarcerated at the Massachusetts
Correctional Institution at Walpole, the plaintiff on De-
cember 13, 1974, brought this action against the defend-

---

[1] Acting superintendent of Massachusetts Correctional Institution at
Walpole.

ants, the Commissioner of Correction and the acting
superintendent at Walpole, seeking declaratory and con-
sequential injunctive relief that would have resulted in his
immediate discharge. The plaintiff's case was that he was
being detained unlawfully, beyond his proper term,
through a misinterpretation by the defendants of G. L.
c. 127, § 129, which sets out the method of reducing the
sentences of prisoners by reason of their good conduct
while under sentence. The parties submitted a statement
of agreed facts and a judge of the Superior Court heard
the matter in December, 1974. On February 7, 1975, while
awaiting decision, the plaintiff was discharged from prison.
Judgment was entered for the defendants on April 16,
1975, and the plaintiff duly appealed to the Appeals Court.
The defendants subsequently made a suggestion of moot-
ness to a single justice of that court who denied the motion
but permitted the parties to file briefs on the question for
consideration by the full bench. We transferred the appeal
to this court on our own motion under G. L. c. 211A,
§ 10 (A).

Deferring the question of mootness, we examine G. L.
c. 127, § 129, as amended through St. 1967, c. 379 (repro-
duced in part in the margin).[2] This obliges the appropriate

[2] "The officer in charge of each correctional institution or other place
of confinement, except a defective delinquent department, shall keep a
record of each prisoner in his custody whose term of imprisonment is
four months or more. Every such prisoner whose record of conduct
shows that he has faithfully observed all the rules of his place of con-
finement, and has not been subjected to punishment, shall be entitled
to have the term of his imprisonment reduced by a deduction from the
maximum term for which he may be held under his sentence or sen-
tences, which shall be determined as follows: Upon a sentence of not
less than four months and less than one year, two and one half days
for each month; upon a sentence of not less than one year and less than
two years, five days for each month; upon a sentence of not less than
two years and less than three years, seven and one half days for each
month; upon a sentence of not less than three years and less than four
years, ten days for each month; upon a sentence of four years or more,
twelve and one half days for each month; provided, however, that no
prisoner serving a sentence imposed for a violation of ... [certain sec-
tions of the General Laws proscribing sexual offenses], or for an at-
tempt to commit any crime referred to in said sections shall be entitled
to have the term of his imprisonment under such sentence reduced un-

Diafario *v.* Commissioner of Correction.

officer, in all but a few cases, to reduce a prisoner's stated term of imprisonment by a specified number of days per month if he has observed all institutional rules. The rate of reduction rises with the maximum term for which the prisoner may be held under his sentence or sentences, the highest rate of reduction being twelve and one-half days per month for a term of four years or more. Thus, if a prisoner's sentence is three years, he secures a reduction of ten days per month; with a sentence of six years or two consecutive three-year sentences, he is entitled to a reduction of twelve and one-half days per month. No reduction is permitted from sentences for certain specified offenses including crimes committed while in prison.

The parties differ on just how a reduction should be worked out where there are two consecutive sentences. The defendants combine or aggregate the two sentences to fix a maximum term from which the total good conduct credit is subtracted. So, with two consecutive sentences, one of four years and the other of one year, the prisoner on good conduct serves five years less 750 days, and a single termination date is fixed for both sentences. The plaintiff, on the other hand, argues that the first sentence should be separately reduced and a termination date fixed for each sentence: in the case given, the first sentence

der the provisions of this section. If a prisoner has two or more sentences to be served concurrently or otherwise, the maximum period of time for which he may be held under his sentences shall be the basis upon which the deduction shall be determined; except that when a prisoner on parole is sentenced for a new crime, the sentence on which he was paroled shall be considered separately, and shall not be aggregated with any new sentence for the purposes of determining the deductions. . . .

. . . .
"If, during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, he shall not be entitled to any deductions hereunder from the new sentence or sentences of imprisonment. A prisoner released on parole by the parole board, who has failed to observe all the rules of his parole and has been returned to a correctional institution for the violation of his parole, shall not receive deductions described in this section until he has served six months following his return to the correctional institution."

would be reduced by 600 days, yielding a termination date for that sentence; the second sentence would be taken to start from that date and would end one year less 150 days later.

Normally the two methods would produce the same final termination date, but a sticking point is reached in situations where parole is violated. Section 129 states that "[a] prisoner released on parole ... who has failed to observe all the rules of his parole and has been returned to a correctional institution for the violation of his parole, shall not receive deductions described in this section until he has served six months following his return to the correctional institution." In the plaintiff's view, where a prisoner violates parole after the "termination" date of the first sentence, only those reductions attributable to the second sentence can be withheld. If it turns out on reincarceration that the termination date of the second sentence is less than six months distant without the benefit of any good conduct days applicable to that sentence, the prisoner should be released on that date. By the defendants' method, as both sentences had a single termination date, good conduct days applicable to both sentences would be withheld until the six months had elapsed or until the maximum term for both sentences had expired. The defendants' method increases the chance that a parole violator will have to serve the entire six months following reincarceration.

The problem is made real by the facts of the present case. In 1971 the plaintiff was sentenced in the Superior Court to a term of two and one-half to four years on conviction for unlawful possession of a firearm and assault with a dangerous weapon (sentence A). As the sentence was to run from March 4, 1971, the defendants, applying the rate of twelve and one-half days per month, fixed a termination date of July 11, 1973. About two years later, on March 14, 1973, the plaintiff was convicted in the Superior Court of burning the contents of a building and malicious destruction of property and sentenced to a term of one year to one year and one day (sentence B), to be

Diafario *v.* Commissioner of Correction.

served "from and after" sentence A. Since the conviction was for an offense committed while in prison, the plaintiff was not entitled to any good conduct reductions from sentence B. A year later, on March 6, 1974, the plaintiff was paroled. On May 29, 1974, a warrant was issued against him for parole violation, and on August 16, 1974, he was returned to Walpole.

The defendants then fixed his termination date as February 7, 1975. The maximums of the two sentences were aggregated for a total of five years and one day. Time already served (March 4, 1971, to May 29, 1974) was deducted.[3] The plaintiff was entitled to good conduct credits totaling 600 days (at the rate of twelve and one-half days per month for forty-eight months)[4] but, because of the parole-violation clause of § 129, he could not be allowed a reduction until February 7, 1975.[5] The plaintiff, on the contrary, would fix the termination of sentence A at July 11, 1973. Sentence B would begin on July 12, 1973, and when the warrant issued on May 29, 1974, the plaintiff would have but one month and fifteen days remaining on sentence B without considering good conduct credits. Thus when the plaintiff returned to prison on August 16, 1974, his termination date should have been set at October 2, 1974. The provision that disallows good conduct credits after a parole violation until the prisoner has served six months would not affect the matter because the second sentence would terminate short of the six months without good conduct reduction.

The plaintiff offers two alternative readings of § 129 under which his method of computation might prevail.

1. First, the plaintiff focuses on the third sentence of

---

[3] The .time between release on parole and the revocation of parole is considered as "part of the term of [the] sentence." G. L. c. 127, § 149, as appearing in St. 1972, c. 154, § 1.

[4] The rate of reduction was multiplied by forty-eight months instead of sixty months because the plaintiff was not entitled to any credits against sentence B.

[5] This date, slightly less than six months following reincarceration, is accounted for by minimal reductions for donation of blood.

§ 129, in part as follows: "If a prisoner has two or more sentences to be served concurrently or otherwise, the maximum period of time for which he may be held under his sentences shall be the basis upon which the deduction shall be determined . . . ." He contends that this provision authorizes aggregation of sentences only to determine the proper rate of reduction; it does not speak to the question of termination date, and a separate termination date is to be fixed for each of the consecutive sentences (and this without regard to whether both sentences are subject to good conduct credits). This leads in the present case to release on October 2, 1974, as indicated.

Section 129 is not altogether clear, but we do not think this reading should be accepted. The language quoted certainly does not forbid fixing a single termination date. Indeed, the combining of consecutive sentences for the purpose of finding a reduction rate suggests an intention to combine them to fix termination. The language of the second sentence of § 129, moreover, looks to a single reduction from the combined sentences for the latter purpose. Thus: "Every . . . prisoner whose record of conduct shows that he has faithfully observed all the rules of his place of confinement, and has not been subjected to punishment, shall be entitled to have the term of his imprisonment reduced by a deduction from the maximum term for which he may be held under his sentence or sentences . . . ." We think, too, that the plaintiff's approach, urged upon us for application in calculating all consecutive sentences, would be less responsive in the general run of cases to the evident purpose of an aggregation provision which is to achieve similar treatment of those similarly situated. For purposes of fixing the rate of reduction, a prisoner sentenced to consecutive terms should receive the same treatment as a prisoner under an equivalent single sentence. So much is agreed. But parity of treatment should go further in the case of the consecutive sentences to the fixing of a single release date and the withholding of good conduct credits from all the sentences under the six months' clause; otherwise the likelihood is created that,

Diafario *v.* Commissioner of Correction.

without discernible reason, prisoners under single sentence could receive less favorable treatment than those sentenced for the same total period but under consecutive sentences.[6]

In adopting the defendants' interpretation we need not give weight to their assertion that they have acted consistently with it in practical administration. See *Devlin v. Commissioner of Correction*, 364 Mass. 435, 439 (1973) (administrative interpretation of penal statute). Hence we can omit discussion of the plaintiff's claim that no record was made to support the judge's finding that there had been such an administrative practice over a long period of time.

2. Assuming that the defendants can justify their computational method in the generality of cases, the plaintiff argues that the present situation is distinguishable because sentence B, for conviction of a crime committed in prison, is one not subject to reduction for good conduct.[7] The plaintiff appears to argue that such a sentence cannot be aggregated even for the purpose of finding the proper rate of reduction for a sentence which is subject to good conduct credits;[8] and it would follow that the two kinds of

---

[6] As noted, if the prisoner serving the consecutive sentences were reincarcerated for a parole violation after termination of the first sentence, only those good conduct credits applicable to that remaining sentence, if any, could be withheld; and, if it turned out that the termination date of the second sentence was less than six months away without benefit of good conduct reductions, that prisoner would be released before six months had elapsed. In the case of the prisoner serving the single sentence, however, significantly more good conduct credits are subject to withholding. Thus, the prisoner stands a greater chance of having to serve the entire six months before being released, even if incarcerated, paroled, and reincarcerated on exactly the same dates as the first prisoner.

[7] See the language of § 129 (n.2 above) forbidding good conduct reductions from sentences for crimes committed "during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth."

[8] The plaintiff happens to be comfortable with an argument that would disallow aggregation of sentence B with sentence A to find a reduction rate on sentence A, because in his case the rate applicable to

sentences would stand apart for the other purposes as well. The defendants, on the other hand, rest on the second sentence of the statute. Taking that provision literally, they combine sentences on which good conduct credits can, and cannot, be earned to find a single termination date with the sequelae in case of parole violation.

We think the literal reading should be accepted, especially as the other method would tend to produce sometimes the anomalous result of according more lenient treatment to the less deserving cases.[9] We are not persuaded that the plaintiff has pointed to features which should serve to distinguish the present situation from the general run.

Concluding on the substantive merits, we note by way of caveat that our interpretation is confined to § 129 as to which, we should add, no instructive legislative history or similar indicator has been found. Other statutes on computation of sentences may have their own histories and call for different analysis.

3. That the plaintiff had been discharged from prison by the time judgment was entered in the Superior Court, and well before his appeal could be heard, might ordinarily render his appeal moot, as indicated in *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701 (1976). But here we have a question of some importance, likely to recur; and the factors of time may be such — they were so in this case — as to render it at least difficult for a prisoner to litigate the question to a conclusion before discharge on an official theory of computation which is claimed to be unlawful.

sentence A alone was the highest available; but the argument would work against prisoners in other situations. We need not pass on the matter to decide the present case.

[9] By the plaintiff's theory, a prisoner in his position, reincarcerated for a violation of parole after "termination" of the first sentence, and with the "termination" of his second sentence less than six months away, would be released before the six months had elapsed. But if both the sentences had been for crimes committed outside prison, then (following the method approved in point 1 above), they could be combined, more than six months of the maximum term would remain, and the prisoner could be held for six months.

Thus the controversy can be said to be one "capable of repetition, yet evading review," and therefore excepted from the canon of mootness. *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973), quoting from *Southern Pac. Terminal Co.* v. *Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911). *Gas & Elec. Comm'rs of Middleborough* v. *Department of Pub. Util.*, 363 Mass. 433, 436 (1973). *Roe* v. *Wade*, 410 U.S. 113, 124-125 (1973). We note as a further reason for reviewing the case that our decision may conceivably stimulate legislative interest in clarifying § 129 or evaluating the administrative practice thereunder.

*Judgment affirmed.*