ANTHONY J. PINA vs. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, WALPOLE.

Norfolk. September 13, 1978. — November 16, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Parole. Imprisonment. Habeas Corpus.*

A controversy about the number of days remaining to be served on a prisoner's sentence was not rendered moot by the prisoner's confinement for another offense inasmuch as the prisoner would be required to serve any time remaining on his first sentence after expiration of the second. [663–664]

Where a prisoner filed a petition for a writ of habeas corpus challenging the computation of time remaining on his sentence but the judge, acting within his discretion, granted relief which was declaratory in nature, the defendant was entitled to appeal from the judgment. [664–666]

Under the provisions of G. L. c. 127, §§ 129 and 149, a prisoner whose parole was revoked was not entitled to receive good conduct deductions from his sentence for the period running from the date of his release on parole to the date of revocation. [666–669]

PETITION for a writ of habeas corpus filed in the Superior Court on October 18, 1977.

The case was treated as a civil action seeking declaratory relief and was heard by *Garrity*, J.

The Supreme Judicial Court granted a request for direct appellate review.

The case was submitted on briefs.

*Terence M. Troyer*, Assistant Attorney General, for the defendant.

*Anthony J. Pina*, pro se.

LIACOS, J. While incarcerated at the Massachusetts Correctional Institution at Walpole (M.C.I., Walpole), the plaintiff, Anthony J. Pina, filed in the Superior Court a petition for a writ of habeas corpus. The plaintiff claimed in his petition that the defendant had denied him statutory deductions to which he was entitled for good conduct while on parole as well as other earned deductions. This denial of statutory deductions allegedly resulted in the plaintiff's incarceration beyond the term of his sentence. A hearing was held before a judge of the Superior Court on February 17, 1978. The facts were undisputed. The judge entered a judgment ordering the recomputation of the plaintiff's discharge date. The defendant filed a notice of appeal and also moved for a stay pending appeal. The judge allowed the stay on condition that the plaintiff be released on personal recognizance. The defendant then applied for direct appellate review under G. L. c. 211A, § 10 (A), which we allowed.

Shortly before the submission of briefs, the plaintiff filed a motion to "estop" the defendant's appeal contending that no appeal lies from the granting of a writ of habeas corpus. We decided to consider the plaintiff's motion with the case in chief. Additionally, the plaintiff now suggests that his original claim is moot. We find that neither of the plaintiff's procedural claims bars this appeal. Moreover, we find that the lower court's decision conflicts with the legislative purpose underlying G. L. c. 127, §§ 129, 149, and we therefore reverse.

We recite the facts essential to decision. On June 7, 1972, the plaintiff was convicted of the crime of assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A) and sentenced to not less than five nor more than ten years at M.C.I., Walpole. The plaintiff was released on parole on July 27, 1976. A little more than ten months later, on June 1, 1977, his parole was revoked for reasons

not shown in the record. Nor is it shown whether the plaintiff was immediately taken into custody as a result of that revocation. On August 28, 1977, he was arrested for a crime allegedly committed in Carver, Massachusetts, unrelated to the parole revocation. The plaintiff was returned to M.C.I., Walpole, on August 30, 1977, to serve his original sentence.

General Laws c. 127, § 129, as amended through St. 1967, c. 379 provides that every prisoner who observes prison rules is entitled to a certain amount of statutory good conduct deductions, subject to forfeiture, "from the maximum term for which he may be held under his sentence." Persons such as the plaintiff, who must serve four or more years, are entitled to twelve and one-half days for each month of their sentence. Accordingly, the Commissioner of Correction credited the plaintiff with fifty months of good conduct deductions as soon as the plaintiff began serving his sentence. See *Allen* v. *Massachusetts Parole Bd.*, 352 Mass. 471, 475 (1967). The plaintiff was thus eligible for discharge under the original calculation by the Commissioner on April 24, 1978, barring any violation of prison rules and subsequent forfeiture of credit.

General Laws c. 127, § 129, has been interpreted by the Department of Correction to provide that a prisoner released on parole who faithfully observed all the rules of parole may receive deductions based only on that period during which he is actually confined. Therefore, when a prisoner is paroled, the expiration date of his sentence is recalculated, subtracting from the maximum term only those deductions already earned. The result of this interpretation is that, as between two persons receiving identical sentences to begin at the same time, the person who remains in prison will serve a shorter sentence than the person who leaves prison on parole. Of course, the person on parole enjoys a substantial degree of liberty unknown to the prison inmate.

On revocation of a prisoner's parole and his reincarceration, the Commissioner calculates the prisoner's dis-

charge date a third time. Although each day spent on parole counts toward satisfaction of a prisoner's sentence, G. L. c. 127, § 149, the Commissioner subtracts the number of months on parole from the maximum term to determine the amount of good conduct deductions due. When the plaintiff was returned to Walpole, the number of credits due him was based on a sentence of 109 months (120 months maximum less eleven months on parole), and his discharge date thus was set at December 6, 1978.

During the course of the hearings below, the judge determined that the plaintiff is entitled to 153½ days of "earned good time credit."[1] That finding is not is dispute. The judge also found as matter of law that contrary to the practice of the Department of Correction the plaintiff is entitled to statutory good time deductions under § 129 for the period during which he was on parole. The judge below based this conclusion on G. L. c. 127, § 149, as appearing in St. 1972, c. 154, § 1, which provides in part: "A prisoner [whose parole has been revoked and] who has been ... returned to prison shall be detained therein according to the terms of his original sentence. In computing the period of his confinement, the time between the day of his release upon a permit or on parole and the day of revocation ... shall be considered as part of the term of his sentence ...." Given that § 129 mandates entitlement "from the maximum term for which [a prisoner] may be held under his sentence" and that time on parole is part of that sentence, the judge reasoned that § 129 must also mandate entitlement to deductions from time spent on parole.

---

[1] "Earned good time credit" is awarded for participation in certain programs by a prisoner. See, e.g., G. L. c. 127, § 129A (donation of blood); § 129C (additional credits while confined in a prison camp); and § 129D (participation in certain work, educational, vocational training, and rehabilitation programs). These "earned good time credits" generally are not subject to forfeiture and are distinct from "statutory good time" deductions under G. L. c. 127, § 129.

Despite his finding in favor of the plaintiff, the judge did not determine whether he was eligible for immediate release; rather he entered a judgment which ordered the Department of Correction to recompute the plaintiff's discharge date by giving the plaintiff credit for twelve and one-half days' good time pursuant to G. L. c. 127, § 129, "for each month during which he was on parole."[2] The judgment also ordered release on the newly computed discharge date unless prior to discharge the Commissioner declared some portion of the plaintiff's good time forfeited under the first paragraph of G. L. c. 127, § 129. The department recomputed the discharge date as ordered, with forty-five days of good time forfeited, and set April 15, 1978, as the plaintiff's discharge date. On April 14, the plaintiff was released from confinement on the sentence which began in 1972. However, he was held on $20,000 bail on a felony charge pending before the Superior Court in Plymouth County. That charge resulted from alleged conduct occurring between the revocation of the plaintiff's parole and his return to M.C.I., Walpole. He was convicted on May 18, 1978, and sentenced to a term of from six to ten years. The judgment of the lower court judge on this later conviction made no reference to the previous sentence.

1. *Mootness.* The plaintiff claims that the sentence for his May 18, 1978, conviction and the resulting confinement renders this controversy moot. General Laws c. 127, § 149, provides that, "the time between the day after the revocation of his permit or parole until the service of the parole violation warrant shall not be considered as any part of the term of his original sentence. Service of the parole violation warrant shall be made effective forthwith upon the arrest and imprisonment of the parole

---

[2] The judgment ordered other credits not in dispute here, namely: (a) four days credited on the mittimus; (b) two days for the time jailed after the revocation of parole; and (c) 153½ days' good time earned under G. L. c. 127, §§ 129C and 129D.

violator unless he is charged upon arrest with additional crimes committed while on parole or revocation of parole, *then service of said parole violation warrant shall not be effective until the expiration of any additional sentences by parole or otherwise*" (emphasis supplied). Under this provision, time spent by the plaintiff in satisfaction of the second sentence does not count toward completion of the first. *Harding* v. *State Bd. of Parole,* 307 Mass. 217 (1940). Therefore, whether the plaintiff must serve the 137½ days which are the subject of this appeal is not a moot question since he would be required to serve that time at the end of time to be served under the second sentence imposed on May 18, 1978.

2. *Appeal from a grant of habeas corpus.* The long standing rule of the Commonwealth is that exceptions do not lie from an issuance of the writ of habeas corpus. See *Wyeth* v. *Richardson,* 10 Gray 240, 241 (1857). The defendant argues that this rule does not bar his appeal because, although the plaintiff sought a writ of habeas corpus, the judge treated the claim as one seeking injunctive and declaratory relief. From a judgment in such an action, an appeal unquestionably lies. G. L. c. 231A, § 4. Alternatively the defendant argues that we should abandon the long established rule prohibiting appeal from the grant of habeas corpus. We do not consider the defendant's alternative argument because we believe his first argument is correct.

A petition for a writ of habeas corpus is a proper method to challenge the execution of sentence. Cf. *United States* v. *DiRusso,* 535 F.2d 673, 675 (1st Cir. 1976) (Federal habeas corpus provision). In the Commonwealth, a petitioner may obtain a writ either by right, G. L. c. 248, § 1, or at the discretion of the court, G. L. c. 248, § 25. The Superior Court judge may use his discretionary power to issue the writ in controversies involving the number of deductions due if he finds an entitlement to the deductions in question; and if, after recomputation of the expiration date of petitioner's sentence, he finds an entitle-

ment to immediate release. See *Beaton, petitioner,* 354 Mass. 670 (1968); *Stearns, petitioner,* 343 Mass. 53, 57 (1961).

Even assuming that the plaintiff was entitled to all the credits claimed, and that he had not been convicted of the second charge, he was not eligible for release at the time of the hearing on his petition (February 17, 1978). The last sentence of G. L. c. 127, § 129, provides that on reincarceration parole violators must serve a six-month penalty period during which time they may not receive the benefit of statutory deductions previously credited. See *Allen* v. *Massachusetts Parole Bd.,* 352 Mass. 471, 475 (1967). For the plaintiff, this six-month period ran from August 30, 1977, to March 1, 1978. Parole violators may be released without serving the full six months only if the deductions from the expiration date for the maximum term of imprisonment by credits already earned place the release date within the penalty period. The maximum number of credits to which the plaintiff is arguably entitled equals 903½ days. This figure is based on five years of completed time (sixty months times twelve and one-half days, or 750 days) plus 153½ days of credits earned under other sections of the statute. Subtraction of these credits from the expiration date of the plaintiff's maximum term (August 30, 1982) does not place the plaintiff's discharge date within the penalty period. The earliest possible date the plaintiff might have been eligible for release, March 1, 1978, fell twelve days after the hearing on the plaintiff's claim. In fact, a forfeiture of forty-five days of good time credits as authorized by § 129 pushed the plaintiff's discharge date back to April 15, 1978, two months after the hearing.

Inasmuch as the plaintiff failed to state a claim for a writ of habeas corpus the Superior Court judge might have dismissed the action. In *Beaton, petitioner, supra* at 672 n.1 (1968), however, we noted that, because of the limited nature of the remedy of habeas corpus, our declaratory procedure may be more appropriate in chal-

lenges to the execution of sentence. See *Woods* v. *State Bd. of Parole*, 351 Mass. 556 (1967). When, as here, a controversy exists as to the rights of the parties, the judge may construe a petition for a writ of habeas corpus as a claim for declaratory relief. The relief granted by the judge was unquestionably declaratory in nature. Because the defendant may appeal from declaratory judgments, the appeal is properly before us. We now proceed to consider the merits of the defendant-appellant's claim of error.

3. *Good conduct deduction and time spent on parole.* General Laws c. 127, § 129, provides for deductions from the sentence imposed for each prisoner whose "record of conduct shows that he has faithfully observed all the rules of his place of confinement, and has not been subjected to punishment." Section 129 also provides that a prisoner released on parole who observes all the rules of his parole is ineligible for statutory good conduct deductions while not actually confined.[3] Section 129 is silent, however, as to what good time credits, if any, a parole violator should receive for a period running from the date of release to the date of revocation of parole.[4] From this provision the lower court judge inferred that § 129 does not prevent the granting of credit to the plaintiff. The judge ruled, however, that § 149 required that credit be awarded to the parole violator for time spent on parole.[5] We disagree with this interpretation of §§ 129 and 149.

---

[3] "A prisoner released on parole ... who has faithfully observed all the rules of his parole and has not been returned to prison ... shall be entitled to have the term of his imprisonment reduced ... only for that period of the sentence or sentences during which he was actually confined ...."

[4] As previously stated, § 129 precludes receipt of credits until six months following the prisoner's return to the correctional institution.

[5] The language of § 149 relied on by the judge is as follows: "A prisoner who has been so [for a violation of parole] returned to prison shall be detained therein according to the terms of his original sentence. In computing the period of his confinement, the time between the day of his release ... on parole and the day of revocation of such

The Legislature adopted the major portion of the current version of § 129 in 1955.[6] Amendment to that section was part of a larger effort to revamp the entire correctional system. Before the 1955 amendment of § 129, a prisoner released on parole who observed all the rules of his parole qualified for good conduct credit while free as well as while confined. In *Gildea* v. *Commissioner of Correction*, 336 Mass. 48, 51 (1957), we held that the qualification to eligibility—"who has faithfully observed all the rules of his parole, and has not been returned to prison for the violation of his parole"—precluded granting such credits to parole violators. Because *Gildea* interprets the former version of § 129, although decided after the new version was in force, it has not been relied on by the parties to this proceeding. Nor do we place reliance on this decision. We look instead to the history of § 129 as it now stands.

The 1955 amendments were enacted as a result of a study of the Massachusetts correctional system by a Governor's committee, often called the Wessell Committee. In assessing the value of statutory reduction of sentence for good behavior, the Wessell Committee noted that credits "are useful for institutional discipline, . . . that is, as an incentive to good morale." 1955 Senate Doc. No. 750 at 71. With this rationale in mind, the committee further noted that credits "have no place in parole," and recommended that "[g]ood conduct time should be earned only on time served in the institution." *Id.* at 74. That the Legislature adopted this recommendation is clearly reflected in the language of § 129 which ties the granting and revocation of credit to time spent in confinement.

Contrary to the judgment below, § 149 does not conflict with the policy of § 129. The provision that time on parole "be considered as part of the term of his sentence" does

---

permit or parole shall be considered as part of the term of his sentence . . . ."

[6] St. 1955, c. 770, § 66, effective October 20, 1955.

not equate parole time with confinement but merely requires that such time be credited on a day for day basis on the prisoner's sentence. Before this language appeared in § 149, the earlier version of that section provided in effect that a prisoner reincarcerated for parole violation must make up time spent on parole.[7] Although no report accompanied adoption of the current version, it appears that the Legislature sought to temper the harshness of parole revocation and to remove a substantial disincentive to the acceptance of parole. This purpose does not require that the parole violator be treated as if he had never been released. Indeed, the Legislature appears to have rejected a policy of parity by imposing a six-month penalty on parole violators under § 129.

According to the decision below, the parole violator would be eligible for up to twelve and one-half days of statutory good conduct credit for each month spent on parole, whereas a prisoner who obeys the terms of parole would be eligible for day for day credit only. Consequently, by violation of the rules of parole, a prisoner would obtain credits for which he was not otherwise eligible. According to the defendant such a result would be anomalous. We agree.

Lastly, it is argued that our decision in *Diafario* v. *Commissioner of Correction*, 371 Mass. 545 (1976), supports the decision of the lower court judge. The issue in *Diafario* was whether to aggregate or segregate two consecutive sentences when fixing a maximum term from which the total good conduct credit is subtracted. The question of deductions for parole time was not at issue there. All the calculations appearing in that opinion, including one pertaining to the number of good conduct credits for which the prisoner/plaintiff was eligible after a parole revocation, were taken from a statement of agreed facts. We did not make the calculation in question, nor did we consider whether that particular calculation

---

[7] See St. 1941, c. 690, § 3.

376 Mass. 669                                                  669

Massachusetts Home Mortgage Finance Agency v. New Eng. Merchants Nat'l Bank.

accorded with the requirements of § 129. Consequently, nothing contained in *Diafario* supports the decision of the judge in this case.

To sum up: we find that the granting of good conduct deductions for parole time conflicts with the language and purpose of G. L. c. 127, §§ 129, 149. The judgment is to be set aside, the case remanded, and a new judgment declaring the plaintiff's rights is to be entered in accordance with this opinion.

*So ordered.*