FRANCIS B. LYNCH, petitioner.

Norfolk.   April 17, 1979. — May 8, 1979.

Present: GRANT, PERRETTA, & KASS, JJ.

*Imprisonment*, Good conduct deductions, Escape, Parole.

Where a prisoner was sentenced to serve a two-and-one-half to three-year sentence concurrently with an eighteen- to twenty-year sentence on which his parole had been revoked but the revocation of the parole was later adjudged invalid, the prisoner was entitled to good conduct deductions from his eighteen to twenty-year sentence during the period that he was confined on the two-and-one-half to three-year sentence. [532-536]

The Commissioner of Correction was not authorized by G. L. c. 127, § 129, to declare a forfeiture of good conduct deductions from a prisoner's sentence on the basis of his escape from his place of confinement because an escape did not constitute a violation of any rule contemplated by the statute. [536]

Where a prisoner escaped from his place of confinement while serving a sentence on which his parole had been revoked and the revocation was subsequently adjudged invalid, the forfeiture provision of G. L. c. 127, § 83B, could not be invoked against him. [536-538]

PETITION for a writ of habeas corpus filed in the Superior Court Department on January 26, 1979.

The case was heard by *Donahue, J.*

*David Slade (Jonathan Shapiro* with him) for the petitioner.

*Kevin J. Sullivan*, Assistant Attorney General, for the respondents.

GRANT, J. This is a petition for a writ of habeas corpus brought in the Superior Court in Norfolk County on January 26, 1979, against the superintendent of the Massachusetts Correctional Institution at Walpole (Walpole) and the Department of Correction (department) for the purpose of securing the petitioner's immediate release

from Walpole. The case was submitted on a statement of agreed facts, and the petitioner has appealed from the ensuing judgment, which dismissed the petition. The appeal was expedited in this court, and, on April 17, 1979, following the conclusion of the arguments, we ordered that the petitioner be released on his own recognizance pending the appeal.

The following is a summary of the material facts which are (a) agreed to in this case or (b) which appear without dispute from the record on a prior petition for a writ of habeas corpus brought by the petitioner in the Superior Court in Suffolk County against the Commissioner of Correction and the State Board of Parole (parole board).[1]

At some point which does not appear from the records, the petitioner was sentenced in the Superior Court in Suffolk County to serve two concurrent sentences of eighteen to twenty years;[2] the effective date of both sentences was February 3, 1966. The petitioner was paroled from both sentences on February 1, 1973. On October 17, 1973, a parole violation warrant was issued for the petitioner "on the ground that his whereabouts were unknown." That warrant was served on the petitioner on March 7, 1974. The petitioner was interviewed by a member of the parole board on April 10, 1974. On May 21, 1974, the petitioner was convicted in the Superior Court in Middlesex County of assault and battery by means of a dangerous weapon and was sentenced to serve "two and one half to three years, effective March 21, 1974[3], to be served concurrently with the eighteen to twenty year sentences." On May 25, 1974, the parole board voted to

_____

[1] The "Memorandum of Findings, Rulings and Order for Judgment" and the judgment in the earlier case have been made parts of the record in the present case.

[2] The petitioner tells us in his brief that the sentences were for manslaughter and armed robbery.

[3] The statement of agreed facts recites this date as March 21, 1978, but it is clear from other parts of the record in the present case that the correct date was March 21, 1974.

revoke the petitioner's parole on the latter sentences.[4]

On November 11, 1974, the petitioner was transferred to the prison camp at Monroe (G. L. c. 127, § 83A), from which he "escaped" on November 19, 1974. He was returned on November 26, 1974. On January 25, 1975, he was sentenced in the Superior Court in Franklin County to serve a term of six months for the escape from Monroe (G. L. c. 127, § 83C).[5]

On December 8, 1975, the petitioner filed the earlier petition for a writ of habeas corpus which has already been mentioned. On March 10, 1976, the petitioner received a "good conduct discharge" from the two-and-one-half to three-year sentence for assault and battery. On September 8, 1977, the judge who acted on the earlier petition invalidated the parole board's 1974 revocation of the petitioner's parole on the eighteen to twenty-year sentences because of the board's failure to meet the minimum requirements of due process enunciated in *Morrissev* v. *Brewer*, 408 U.S. 471 (1972).[6] The judge ordered that the petitioner be released from the Massachusetts Correctional Institution at Bridgewater (where he was apparently then confined) and that he be "discharged" to the parole status he had enjoyed immediately prior to the May 25, 1974, vote of the parole board. Judgment to that effect was entered on September 14, 1977, and the petitioner was released on parole on November 14, 1977.[7]

---

[4] It is not clear whether the parole board's vote was for the reason assigned in the parole violation warrant or because of the Middlesex convictions. Nothing turns on any uncertainty in this respect.

[5] The statement of agreed facts does not disclose the effective date of that sentence; at the hearing on the earlier petition the assistant attorney general represented that the sentence for escape was to be served from and after the expiration of the sentence for assault and battery.

[6] See *Stefanik* v. *State Bd. of Parole*, 372 Mass. 726 (1977).

[7] The two-month delay in releasing the petitioner is explained (but not excused) by the respondents' filing a claim of appeal and various postjudgment motions, all of which were ultimately waived on November 9, 1977.

Subsequent events need not be set out in detail; it is enough to know (a) that on November 14, 1978, the petitioner was arrested on another warrant which alleged a further violation ("whereabouts ... unknown") of his parole on the eighteen- to twenty-year sentences and (b) that the petitioner was still incarcerated at Walpole when the present petition was filed.[8]

1. The first question for resolution is whether the petitioner is entitled to statutory good conduct deductions from his eighteen to twenty-year sentences in accordance with the provisions of G. L. c. 127, § 129, as amended,[9] during the period that he was confined on the two-and-one-half- to three-year sentence for assault and battery, namely from May 21, 1974, through March 10, 1976. The petitioner contends that he is entitled to such deductions during that period; if he is correct in his contention, then the aggregate of all the deductions to which he is entitled

---

[8] The likelihood that the parole board effected a revocation of the petitioner's parole following his arrest on that warrant does not affect the ultimate result in this case. The assistant attorney general who argued the case before us agreed that the petitioner should be released immediately if we should conclude (a) that the petitioner is entitled to good conduct deductions for the entire period from May 25, 1974 (when the parole board first voted to revoke the petitioner's parole), and November 14, 1977 (when the petitioner was released in response to the 1977 decision of the Superior Court), and (b) that the department is not entitled to declare a forfeiture of all good conduct deductions (see part 2 of this opinion). As indicated in the text, the only portion of that period which is still in dispute is the one between May 21, 1974, and March 10, 1976, during which the petitioner was confined on the sentence for assault and battery.

[9] Section 129, as amended through St. 1967, c. 397, provides in material part as follows: "The officer in charge of each correctional institution or other place of confinement ... shall keep a record of each prisoner in his custody whose term of imprisonment is four months or more. Every such prisoner whose record of conduct shows that he has faithfully observed all the rules of his place of confinement, and has not been subjected to punishment, shall be entitled to have the term of his imprisonment reduced by a deduction from the maximum term for which he may be held under his sentence or sentences, which shall be determined as follows: ... upon a sentence of four years or more, twelve and one half days for each month. ..."

under the aforementioned G. L. c. 127, § 129, and under G. L. c. 127, §§ 129A (blood donations) and 129D (satisfactory performance of work or completion of certain programs), would (apart from the question considered in part 2 of this opinion) result in a determination that the petitioner should have been discharged from the eighteen to twenty-year sentences on October 8, 1978. The department has taken the position that the petitioner is not entitled to good conduct deductions during the period in question; if it is correct in its position, then the aggregate of all the deductions to which the petitioner is entitled would (if we accept the department's view on the question considered in part 2 hereof) result in a determination that the petitioner need not be discharged until November 10, 1979.

The obvious sticking point is the effect which should be given to the Superior Court's 1977 determination of the invalidity of the 1974 revocation of the petitioner's parole on the eighteen to twenty-year sentences. It is common ground that that point cannot be dislodged by reference to any statutory provision.[10] The Supreme Judicial Court, in the course of resolving not dissimilar questions in the absence of relevant statutory provisions, has consistently taken a humanistic rather than an overly legalistic approach to the problem at hand. See, e.g., *Brown* v. *Commissioner of Correction*, 336 Mass. 718, 721, 722 (1958) (starting date of sentences which were to take effect from and after the expiration of prior sentences which had been imposed on convictions that were subsequently reversed); *Manning* v. *Superintendent, Mass. Correctional*

---

[10] If there were no question as to the validity of the 1974 revocation, this case would be quickly resolved under the last sentence of G. L. c. 127, § 149, which would require us to conclude that the period of time during which the petitioner was confined for assault and battery should not be considered as any part of the time served on either of the original sentences. It has not been suggested by anyone that the provisions of G. L. c. 127, § 129C, have any application to the present case.

*Inst., Norfolk*, 372 Mass. 387, 390, 392, 393-394, 396 (1977) (possible service of "dead time" on subsequently vacated sentences).

In *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424 (1978), the court was confronted with the question whether, in the peculiar circumstances of the particular case, a returned prisoner should be given credit on his Massachusetts sentence for time which he had served on a California sentence following his escape from a Massachusetts correctional facility. The court described its approach to that question in the following language: "We believe that fairness is the appropriate measure in determining whether and to what extent Chalifoux must be given credit for the time he served in California. In cases involving the issue whether credit should be given for time served on multiple sentences imposed within the Commonwealth, where no statute was controlling, we have been guided by considerations of fairness and a proper sense of justice. *Brown* v. *Commissioner of Correction*, 336 Mass. 718, 721 (1958). *Lewis* v. *Commonwealth*, 329 Mass. 445, 448 (1952). Cf. *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 394 (1977) ('Liberty is of immeasurable value; it will not do to read statutes and opinions blind to the possible injustice of denying credit'); *Commonwealth* v. *Grant*, 366 Mass. 272, 275 (1974) (statute concerning credit for time spent in confinement before sentencing 'should be read against the backdrop of fair treatment of the prisoner'). Although fairness is the concept underlying due process, our decisions in this area have not rested on constitutional requirements. Where no statute controls, we have been establishing guiding principles, case by case, as we do in the matter now before us." 375 Mass. at 427-428. Based on "considerations of fairness" (375 Mass. at 429), the court concluded that the trial judge had been correct in ordering that the prisoner be given credit for the time served in California.

Guided by the foregoing principles, we conclude that the petitioner is entitled to good conduct deductions (G. L. c. 127, § 129) from his eighteen to twenty-year sentences during the period of his confinement on the two-and-one-half to three-year sentence for assault and battery. The petitioner's conduct during that period was obviously good because he was given a "good conduct discharge" from the latter sentence some six months prior to the stated minimum term thereof. Contrary to the basic contention now advanced by the department, the petitioner appears to have been treated as if he were in fact serving the eighteen to twenty-year sentences throughout the entire period of his confinement on the sentence for assault and battery.[11] In that respect the present case resembles that of *Lewis* v. *Commonwealth,* 329 Mass. 445, 451 (1952), in which the court concluded that the petitioner was entitled to good conduct deductions under G. L. c. 127, § 129, for the entire period of his confinement under an invalid sentence. Finally, we see no harm in expressing our view that the award of good conduct deductions in the aggregate of approximately 300 days[12] is small compensation for the petitioner's actual loss of liberty during the period of approximately thirteen months that intervened between the expiration of his sentence for escape (approximately October 10, 1976; see note 5, *supra*) and the ultimate date of his release

---

[11] At the hearing on the earlier petition for habeas corpus, which was conducted two days after the petitioner's receipt of the discharge from the sentence for assault and battery, the assistant attorney general, in the course of discussing the interrelationship between that sentence and the ones of eighteen to twenty years, made the following representations to the court: "[T]he sentences were set to be concurrent. The Department of Corrections and the Parole Board have just been computing them simultaneously. One has now expired and a Certificate of Discharge has been issued. The other one has been running at exactly the same time and two more years have been credited to the 18 to 20."

[12] 12.5 days (see note 9, *supra*) × 24 months (approximate length of time actually served for assault and battery).

(November 14, 1977), during all of which, according to the 1977 judgment, the petitioner should have been out on parole. We recognize that a prisoner cannot earn good conduct deductions while out on parole (*Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. 659, 666 [1978]), but we think it a fiction to say that the petitioner was out on parole because he should have been.

2. The remaining question is whether the petitioner has forfeited all good conduct deductions (G. L. c. 127, § 129) from the eighteen to twenty-year sentences which he might have earned prior to the date of his "escape" from Monroe on November 19, 1974. There appear to be two prongs to the department's position on this question. The first is based on the present fourth sentence of G. L. c. 127, § 129, which reads in material part as follows: "If a prisoner violates any rule of his place of confinement, the commissioner of correction . . . shall decide what part, if any, of such good conduct deduction from sentence or sentences shall be forfeited by such violation. . . ." If we assume that the Commissioner did purport to declare a forfeiture, he must face the difficulty that he has failed to point to a violation of any rule of the type contemplated by the statute. See *Gardiner* v. *Commissioner of Correction*, 5 Mass. App. Ct. 425, 428 n.5 (1977).[13]

The second prong is grounded on the present first sentence of the second paragraph of G. L. c. 127, § 83B, as amended through St. 1972, c. 172, § 2, which reads: "If a prisoner escapes or attempts to escape from a prison camp all deductions from the sentence he is then serving shall be thereby forfeited." The department's suggestion (if correct) that § 83B does not distinguish between legal and illegal sentences is beside the point, as there was nothing illegal about either of the eighteen to twenty-

---

[13] The records of the Supreme Judicial Court (No. 1123 of 1978) disclose that the application for further appellate review of this case which was granted on September 7, 1977, 373 Mass. 864 (1977), was subsequently dismissed on March 9, 1978.

year sentences. Directly in point is the department's acknowledgment that the forfeiture provision of § 83B is penal in nature and that any ambiguity therein must be strictly construed in favor of the petitioner. *Wood* v. *Commissioner of Correction*, 363 Mass. 79, 81 (1973). With that point in mind, we turn to an analysis of the language of § 83B and its possible application to the circumstances of the present case.

As it will make no difference in the ultimate result, we shall assume in this branch of the case that the petitioner was serving the eighteen to twenty-year sentences at the time of his departure from Monroe on November 19, 1974. The 1977 judgment has established the proposition that the petitioner was on parole from those sentences on the date in question.[14] The very meaning of the word "parole" when used in its present context is that a person under sentence is given a permit to be at liberty from his place of confinement. G. L. c. 127, §§ 128, 129, 130 and 131. Accordingly, significant questions arise as to whether it can properly be concluded that the petitioner was (a) a "prisoner" who (b) "escaped" within the meaning of G. L. c. 127, § 83B. If we pass the first of those questions (see n.14) we are immediately faced with the proposition that one of the essential elements of escape by a person under sentence is that he depart from his place of confinement without proper authorization. *Commonwealth* v. *Hughes*, 364 Mass. 426 (1973). *Commonwealth* v. *Reed*, 364 Mass. 545, 546, 548 (1974). *Commonwealth* v. *Meranda*, 2 Mass. App. Ct. 890, 891 (1974).

In short, there is room for doubt whether it is legally possible for a person who has been paroled from a place of confinement to escape therefrom. Our doubt on this

[14] A prisoner who is released on and complies with the terms and conditions of his parole continues to serve his sentence in the sense that he remains subject to supervision and is given day for day credit against the unexpired term of his sentence. G. L. c. 127, §§ 130, 131 and 149. *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. at 661-662, 667-668 (1978).

point is so grave as to compel the conclusion that the provisions of § 83B are ambiguous when considered in light of the peculiar circumstances of the present case. It follows from the principle of construction expounded in the *Wood* case (363 Mass. at 81) that the petitioner must be given the benefit of the doubt, with the result that the forfeiture provision of § 83B cannot be invoked against him with respect to the eighteen to twenty-year sentences.

The judgment is reversed, and a new judgment is to be entered which orders the immediate discharge and release of the petitioner from any further service of those sentences.

*So ordered.*