JOHN REAL vs. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, WALPOLE.

Norfolk.  March 10, 1983. — November 10, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Imprisonment.  Practice, Civil,* Declaratory relief.  *Habeas Corpus.  Due
Process of Law,* Prison disciplinary proceeding.

A prisoner's petition for habeas corpus relief, challenging the constitution-
ality of his placement in the isolation unit of a correctional institution,
was properly treated by a Superior Court judge as a claim for declara-
tory relief.  [403-404]

In order to meet Federal due process standards, State prison disciplinary
proceedings must be governed by regulations requiring that, where a
disciplinary board decides not to allow attendance of inmate witnesses
requested by the accused, the board's decision must have some support
in the record of the administrative hearing, at least where the pro-
ceeding can result in loss of a prisoner's statutory good time credit.
[404-407]

A prisoner's placement in the isolation unit of a correctional institution
did not infringe any State-created liberty interest protected under the
due process clause of the Fourteenth Amendment to the Federal Con-
stitution, even if this placement was the direct consequence of a consti-
tutionally flawed disciplinary proceeding.  [407-408]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on April 8, 1982, and May 4, 1982, respectively.

The cases were heard by *Mitchell,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

The case was submitted on briefs.

*John Real,* pro se.

*Francis X. Bellotti,* Attorney General, *Stephen R. Delin-
sky, Barbara A. H. Smith, & Leo J. Cushing,* Assistant Attor-
neys General, for the defendant.

LIACOS, J. This is one of four cases decided today[1] involving the constitutionality of procedures at State prison disciplinary hearings. Plaintiff John Real brought two separate pro se petitions for a writ of habeas corpus against the defendant.[2] The first action sought the plaintiff's release from the Institutional Disciplinary Unit (I.D.U., or Block 9)[3] at the Massachusetts Correctional Institution, Walpole (M.C.I., Walpole), alleging that confinement to the I.D.U. while a prisoner is awaiting action before the Department Segregation Unit Board (D.S.U. board) pursuant to a disciplinary sanction of reclassification is unconstitutional and that the conditions of the confinement in the I.D.U. violated the First and Eighth Amendments to the United States Constitution. In the second action, the plaintiff sought the removal of sanctions imposed by the disciplinary board (board) alleg-

---

[1] See *Nelson* v. *Commissioner of Correction, ante* 379 (1983); *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole, post* 409 (1983); *Cassesso* v. *Commissioner of Correction, post* 419 (1983). See also *Royce* v. *Commissioner of Correction, post* 425 (1983).

[2] All of the court documents submitted by the plaintiff are handwritten and apparently drafted by him. We recognize that "[t]he handwritten *pro se* document is to be liberally construed. As the [Supreme] Court unanimously held in *Haines* v. *Kerner,* 404 U.S. 519 (1972), a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle* v. *Gamble,* 429 U.S. 97, 106 (1976), quoting *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). See *Hurney* v. *Carver,* 602 F.2d 993, 995 (1st Cir. 1979). Accordingly, with considerable difficulty, we identify and discuss the issues that seem to us both preserved and substantial.

[3] The Institutional Disciplinary Unit is a "short-term segregation disciplinary unit." Its purpose is the separation of certain individuals from the general prison population by confinement in a specific, designated area under even further limitations and restrictions. See generally G. L. c. 127, § 39. In addition to disciplinary segregation, such separate confinement may apply to inmates for administrative reasons. See also *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole, supra.* Isolation may be imposed only for disciplinary reasons after a disciplinary hearing. Isolation time may also be served in a locked cell in the segregation unit. See generally G. L. c. 127, § 40. The internal institutional policy makes no distinction for the conditions of separate confinement between those inmates being segregated for disciplinary reasons and those segregated for administrative reasons.

ing that his constitutional right of due process[4] was violated
by the procedures in which the board denied his request for
certain witnesses at a disciplinary hearing.

Both actions were heard together on the merits before a
judge of the Superior Court on May 25, 1982.[5] The trial
judge treated both petitions as complaints for declaratory
judgment. The judge implicitly found that the reason for
the plaintiff's placement in I.D.U. after the hearing was his
alleged misconduct. In reviewing the procedures followed
at the disciplinary hearing, the judge concluded that the
plaintiff's due process rights had been violated by the
board's denial of the plaintiff's request for witnesses. Thus,
the judge concluded the plaintiff's subsequent confinement
to the I.D.U. to be invalid. The trial judge ordered the
plaintiff returned to the general prison population. He also
ruled the sanction comprising the loss of 150 days of statu-
tory good time credit resulting from the disciplinary hearing
to be invalid, and he ordered the respondent to credit the
petitioner with the 150 days' good time.

The defendant sought a stay of the judgments pending
appeal of both orders. The Appeals Court concluded that
only the motion for a stay from the judgment ordering the
return of the prisoner to the general prison population to be
before it. A stay pending appeal from the order returning
the prisoner to the general prison population was granted.
We transferred the case here on our own motion.

The defendant argues that the trial judge may not con-
strue a petition for writ of habeas corpus as a complaint for
declaratory judgment without proper notice to the adverse
party. Agreeing that *Wolff* v. *McDonnell,* 418 U.S. 539
(1974), sets the minimum due process procedures for the dis-
ciplinary proceeding under Federal law, the defendant also
contends that the board did not violate the mandate of

---

[4] The plaintiff only raised the issue of his due process rights protected by
the United States Constitution. We do not now decide, therefore, if pris-
oners have broader due process rights under our State Constitution.

[5] At the hearing, the trial judge held that the constitutionality of the
conditions of confinement in the I.D.U. was not before him.

*Wolff.* Finally, the defendant claims that the placement of the plaintiff in the I.D.U. was a purely administrative place-ment not infringing any liberty interest of the plaintiff.

We conclude that this action properly was treated by the judge as one seeking declaratory relief. We also conclude, since denial of the plaintiff's request for witnesses is so totally without support in the administrative record, that the judge was warranted in finding that the proceedings violated the due process clause of the Fourteenth Amendment to the United States Constitution.

The facts are as follows. The plaintiff is an inmate law-fully in the custody and care of the Department of Correc-tion.[6] On December 24, 1981, Correctional Officer Baleyko reported the plaintiff for disciplinary violations at M.C.I., Walpole. Within the same day the plaintiff was locked in his cell, and subsequently transferred to a segregation unit at M.C.I., Norfolk. On December 31, 1981, the plaintiff received written notice of a disciplinary hearing scheduled before the disciplinary board. It is unclear whether the plaintiff received an actual copy of the disciplinary report. The judge found, however, that the notice informed the plaintiff that he was charged with disobeying an order in violation of 103 Code Mass. Regs. § 430.22 (1) (1978), with conduct which disrupts or interferes with the security or orderly running of the institution in violation of 103 Code Mass. Regs. § 430.22 (8) (1978) and with participating in or encouraging a riot, work stoppage, hostage taking, or un-authorized group demonstration in violation of 103 Code

---

[6] The plaintiff testified that he is serving a term of three to five years for a conviction of carrying a sawed-off shotgun and that he had been sen-tenced on June 14, 1979.

While incarcerated at M.C.I., Walpole, for the possession of a sawed-off shotgun, the plaintiff was convicted of manslaughter in the death of another inmate. He received a five-year sentence at M.C.I., Concord, to take effect from and after his conviction for carrying a sawed-off shotgun.

Because of the insufficient record before us, we are not clear whether, if we affirm the trial judge's invalidation of the board's sanction, the plain-tiff will have finished his original sentence and will now be serving his sec-ond sentence.

Mass. Regs. § 430.22 (14) (1978). On receipt of the notice, the plaintiff requested representation by counsel and requested the presence of the reporting officer and two inmates as witnesses in his defense.

At the hearing before the board on February 10, 1982, the plaintiff appeared with counsel and pleaded not guilty.[7] The board denied the plaintiff's request for the two inmate witnesses. Real was found guilty of the offenses alleged in the disciplinary report. The board imposed sanctions of thirty days' isolation, forfeiture of 200 days of good time, and a referral to the Departmental Segregation Unit (D.S.U., also known as Block 10, at M.C.I., Walpole).

The plaintiff appealed the guilty finding and the recommended sanctions to the superintendent, who reduced the sanctions to twenty-five days of isolation and forfeiture of 150 days of good time credit.[8] The superintendent also affirmed the recommendation of transfer to the D.S.U. The hearing was held at M.C.I., Walpole. Real was brought from M.C.I., Norfolk, to M.C.I., Walpole, for the hearing. Immediately after the hearing, he was placed in the I.D.U. at M.C.I., Walpole, where he presently remains.

I. *Declaratory relief.* Relying on *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659 (1978), the trial judge chose to treat the plaintiff's petitions for habeas corpus as a claim for declaratory judgment. *Pina,*

---

[7] At the same hearing the board also heard evidence of a second disciplinary report alleging the possession of a weapon in violation of 103 Code Mass. Regs. § 430.22 (15) (1978), the unauthorized possession of another's property in violation of 103 Code Mass. Regs. § 430.22 (23) (1978), and stealing in violation of 103 Code Mass. Regs. § 430.22 (26) (1978). From the record, it is unclear whether this second report was related to the disciplinary report challenged in this case. The disposition of these charges is also unclear. The trial judge found that the plaintiff had received no notice of the second report. The plaintiff, however, does not appear to be challenging the second report.

There is also a prior disciplinary hearing in 1980 to which the plaintiff referred in some confusion at the hearing before the trial judge.

[8] The trial judge did not address his judgments to the isolation time sanction. It appears that the plaintiff has already completed the isolation time.

*supra* at 666. See *Nelson* v. *Commissioner of Correction, ante* 379, 386-388 (1983); *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 850-852 (1982). The defendant states that, while the judge may construe a petition for writ of habeas corpus as a complaint for declaratory judgment, such discretionary power may be exercised only with proper notice to the adverse party to prevent a manifest injustice.

The defendant makes no argument, and cites no authority to support his statement. This portion of the defendant's brief fails to qualify as "argument" within Rule 16 of the Massachusetts Rules of Appellate Procedure, as amended through 386 Mass. 1247 (1982). Accordingly, we do not address the defendant's contention. The plaintiff, challenging the constitutionality of the regulations pertaining to the right to call witnesses as set forth in 103 Code Mass. Regs. § 430.14 (6) (1978), has properly stated a claim for declaratory relief.[9] See *Nelson* v. *Commissioner of Correction, supra* at 387-388; *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 845, 850-851 (1977); *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 296-297 (1975).

II. *Federal due process requirements.* Where the decision of a disciplinary hearing subjects an inmate to a loss of good time credits, he is entitled to the minimal due process requirements mandated in *Wolff* v. *McDonnell, supra.* See *Nelson* v. *Commissioner of Correction, supra* at 388-390. Among these requirements is the right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff, supra* at 566.

In recognizing this right, however, the United States Supreme Court acknowledged that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." *Wolff, supra* at 566. The Supreme Court held that officials may refuse to call witnesses whom they

---

[9] We also address the issue of the particular adjudication for the reasons set forth in *Nelson* v. *Commissioner of Correction, supra* at 388 n.12.

determine are irrelevant, unnecessary, or hazardous, and it went on to say that it would be "useful," although not required, for reasons for denial to be stated. *Wolff, supra.* In a later case, the Supreme Court indicated that it was referring in *Wolff* to a written statement of reasons but that such a written statement was not required. *Baxter* v. *Palmigiano,* 425 U.S. 308, 322 (1976). Left unresolved is the question whether the Federal due process requirements impose a duty on the board to explain, in any fashion, at the hearing or later, why witnesses were not allowed to testify. It is this question that the facts of the instant case present to us. No such explanation is required by 103 Code Mass. Regs. § 430.14 (1978), reprinted in the margin, involving witnesses requested by the inmate for disciplinary hearings.[10] If we

---

[10] The relevant portions of the State regulations are as follows:

"*430.14:  Fact Finding Aspects of Hearing Before Disciplinary Board.*

". . . .

"(4) If the inmate requests the presence of the reporting officer in accordance with the provisions of 103 CMR 430.11 and/or 430.12, the reporting officer shall attend the hearing except when the chairman determines in writing that the reporting officer is unavailable for prolonged period of time as a result of illness or other good cause. Such written determination shall be reviewed by the superintendent prior to the commencement of the hearing. The superintendent may approve the determination or disapprove it and require rescheduling of the hearing at a time when the reporting officer will be available. The chairman in his discretion may also require the presence of the reporting officer on his own motion.

"(5) The inmate shall be allowed but shall not be compelled to make an oral statement or to present a written statement in his own defense or in mitigation of punishment.

"(6) The inmate shall be allowed to question the reporting officer, to question other witnesses, to call witnesses in his defense, or to present other evidence, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. The factors that the chairman may consider when ruling on an inmate's questioning of witnesses, offer of other evidence, or request to call witnesses shall include, but shall not be limited to, the following:

conclude that due process requires some explanation for the denial of witnesses, the State regulations will not be constitutional.

The right to call witnesses is limited under Federal law. See *Wolff, supra* at 566. See also *Baxter, supra* at 321. Broad discretion is given to prison administrators out of necessity because "[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff, supra* at 566. Such broad discretion, however, is not limitless. See *Cardaropoli* v. *Norton,* 523 F.2d 990, 998 (2d Cir. 1975). The purpose of the due process clause of the Fourteenth Amendment is to protect the individual against arbitrary governmental action. *Wolff, supra* at 558. Clearly, "[d]ue process does not permit the automatic exclusion of the right to call witnesses." *Hayes* v. *Walker,* 555 F.2d 625, 629 (7th Cir.), cert. denied, 434 U.S. 959 (1977).

The right to call witnesses is an important right to an accused "who obviously faces a severe credibility problem when trying to disprove the charges of a prison guard." *Wolff, supra* at 583 (Marshall, J., dissenting, with whom Brennan, J., joins). To hold that the board need not state its reasons for refusal would render meaningless the prisoner's limited right to call witnesses. See *Hurney* v. *Carver,* 602 F.2d 993, 996 (1st Cir. 1979) (Bownes, J., dissenting); *Hayes, supra* at 630. We find persuasive the requirement of the United States Court of Appeals for the Seventh Circuit that there must be some support in the administrative record to justify a decision not to call witnesses, in order to en-

---

(a) Relevance
(b) Cumulative testimony
(c) Necessity
(d) Hazards presented by an individual case.
"The chairman, in his discretion, may call witnesses on his own motion, and the chairman or the board members may question witnesses or the reporting officer on their own motion.
"(7) The inmate shall be allowed to present relevant, noncumulative documentary evidence in his defense."
Only the denial of a request for the presence of the reporting officer must be explained and placed in writing. See 103 Code Mass. Regs. § 430.14 (4) (1978).

sure that the hearing is not a charade.  See *Hayes* v. *Thompson*, 637 F.2d 483, 487-489 (7th Cir. 1980).

On the record presented before us, there is no explanation for the denial of the inmate witnesses requested by Real. The administrative record is barren.  We conclude that the failure of the regulations to require some support in the record for the denial of the plaintiff's witnesses abridged his Federal due process rights.  The trial judge properly concluded that the sanctions resulting from a constitutionally flawed disciplinary hearing were invalid, and correctly ordered the return of Real's good time credits.

The defendant, however, contends that the return of Real to the general prison population was incorrect because the plaintiff's placement in the I.D.U. was made for administrative reasons.  We recognize that the United States Supreme Court has held that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration" and it does not involve an interest independently protected by the due process clause.  *Hewitt* v. *Helms*, 459 U.S. 460, 468 (1983).  See also *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole, post* 409 (1983).  We do not reach the question whether the statutes and regulations of the Commonwealth create a protected liberty interest respecting administrative segregation because the trial judge implicitly found that the segregation was for disciplinary reasons after the investigation had been completed and determined by the hearing.[11]

---

[11] Even if we were inclined to construe our State regulations and statutes governing intraprison transfer for nonpunitive segregation to involve a State-created liberty interest because of "explicitly mandatory language in connection with requiring specific substantive predicates," that is similar to the Pennsylvania regulations, found by the United States Supreme Court to create a State liberty interest, the parties have not argued their contentions based on that theory.  See *Hewitt* v. *Helms*, 459 U.S. 460, 472 (1983); Mass. R. A. P. 16 (a), as amended, 367 Mass. 919 (1975).  Moreover, we note the due process requirements applicable to administrative segregation are limited.  The *Hewitt* court has stated, "We think an informal, nonadversary evidentiary review is sufficient. . . . An inmate must merely receive some notice of the charges against him and an oppor-

As we have noted today, regardless of the logic of the trial judge's ruling, even if transfers are the direct consequence of a tainted disciplinary hearing, they do not implicate or infringe a State-created liberty interest protected by the due process clause of the Fourteenth Amendment. See *Nelson v. Commissioner of Correction, supra* at 397. The trial judge improperly ordered the return of the plaintiff to the general prison population.

In his findings and rulings on the plaintiff's petition for a writ of habeas corpus, the trial judge states: "I treat the petitioner's writ of habeas corpus as a claim for declaratory relief." As such, he should have declared the rights of the parties and ordered relief. Here, however, the judge ordered a judgment be entered requiring the return of the plaintiff to the general prison population. Subsequently, two judgments were entered, one ordering the restoration of the plaintiff's good time credits and the other ordering his release to the general prison population. To the extent that the form of relief is wrong, we reverse the judgments and remand the case for an entry of judgment declaring the rights of the plaintiff and ordering relief consistent with the principles set forth in our opinion. The defendant is to be given, on request, the right to convene a disciplinary board to conduct a new hearing on the same terms and conditions we describe in *Nelson v. Commissioner of Correction, supra* at 397 n.21.

*So ordered.*

---

tunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose." *Hewitt v. Helms, supra* at 476.