Cowin, J.
INTRODUCTION
The petitioner, Zackery Lane, seeks a writ of habeas corpus pursuant to G.L.c. 248, §1, claiming that the defendant has deprived him of 100 days of good time credit in violation of his due process rights under the United States and Massachusetts Constitutions. Pursuant to a prior order of this Court (Butler, J.), the parties had submitted on the papers. After a review of the papers filed, this Court determined that it was necessary to take evidence on one issue.[1] A hearing was held on that one issue on May 15, 1997. After consideration of the evidence presented at said hearing and the papers of both parties, the Court allows the petition.
FACTS
Petitioner Zackery Lane (Lane) is an inmate incarcerated at the Massachusetts Correctional Institution — Cedar Junction at Walpole, Massachusetts (MCI-Cedar Junction) serving a sentence of four-to-eight years for unarmed robbery. Said sentence was originally imposed on October 20, 1993. Lane would have been discharged from his sentence on March 11, 1997, but for the fact that he lost 100 days of good time credit as a result of a disciplinary hearing held at MCI-Cedar Junction (the disciplinary proceeding or hearing). Petitioner claims that the loss of good time was improperly imposed[2] and that but for the forfei *112 ture he would be entitled to immediate release. He also seeks $100.00 per day for each day he remains in prison beyond his original release date.[3]
The incident that was the subject of the disciplinary proceeding occurred at MCI-Cedar Junction on October 21, 1996. According to the disciplinary report, Sgt. William Grossi, the reporting officer, responded to an alarm in a housing unit at MCI-Cedar Junction and discovered petitioner and another inmate involved in an altercation. After the inmates had been placed in restraints, Sgt. Grossi was instructed to escort the petitioner to the Health Services Unit (HSU) for a medical examination. Sgt. Grossi alleges that the petitioner refused the medical treatment and instead became verbally abusive toward the doctor, Dr. Khalid Khan, shouting: “You’re not examining me, bitch.” The inmate then spat at the doctor. As a result of this behavior, the petitioner was removed from the HSU and a disciplinary report was issued.
A disciplinary hearing was held regarding this incident on November 25, 1996. The respondent states (and the petitioner does not contest) that petitioner initially was present at the hearing but was later removed from it due to his disruptive behavior.[4] The respondent states (in institutional reports submitted to the Court) that Sgt. Grossi was present and testified at the hearing. By affidavit, the petitioner contests the fact of Sgt. Grossi’s presence at the hearing. At the conclusion of the disciplinary hearing, the hearing officer imposed the sanctions set forth above and stated the following as reasons for the sanction:
Inmate’s fatuous behavior and assault on medical personnel is treated with zero tolerance. No inmate will assault staff or other inmates at Cedar Junction without being held accountable. Imposed sanction, holds Lane responsible for his licentious actions. Subject has massed [sic] a poor disciplinary chronology, which has further been taken into consideration to determine a just sanction. Inmate’s assault has been determined to represent a moderate risk to security, assaults of any nature in a volatile environment (a maximum security facility) will not be tolerated. Lane is reminded that he will answer to his actions while housed at this facility.
The hearing officer based his decision upon Sgt. Grossi’s disciplinary report and testimony and the inmate’s failure to remain at the hearing and dispute the charges.[5]
The petitioner appealed the hearing officer’s decision; the appeal was denied on December 5, 1996. The forfeiture of good time was approved by the Commissioner on December 24, 1996.
The petitioner then filed this petition for writ of habeas corpus claiming that he was not guilty of assaulting another person or of disruptive conduct and that because the disciplinary hearing did not comply with departmental regulations the imposed sanction of 100 days forfeiture of good time was illegal. Specifically, the petitioner alleges that he was improperly denied staff assistance to aid him in preparing for the disciplinary hearing and that this denial prevented him from discovering potential witnesses, interviewing them, and obtaining affidavits and exculpatory materials. The petitioner also states that he properly (pursuant to departmental regulations)[6] requested the presence of a witness, Dr. Khalid Khan, and that if Dr. Khan were present at the hearing, the doctor would have testified that the petitioner did not assault him. The petitioner claims that the hearing officer improperly refused to require the appearance of the witness Dr. Khan. Further, the petitioner maintains that Sgt. Grossi whose presence at the hearing he had also requested pursuant to department regulations[7] was not present.
As indicated above, the hearing officer states that Sgt. Grossi was present at the hearing and testified. The explanation given by the hearing officer for the denial of the witness Dr. Khan was as follows:
Pursuant with 1:03 CMR’s [sic] 430.04[8] — The 430.00 CMR’s are applicable to all inmates housed at state correctional facilities as well as all Department of Corrections [sic] employees. Medical services throughout the department are privately contracted; as such medical personnel are not Department of Corrections [sic] employees and are exempt from this administrative process. “Witness Denial Reason” (103 CMR 430.14(4).)
DISCUSSION
The issuance of a writ of habeas corpus is only warranted when the petitioner shows “that he or she is entitled to be released from restraint by the particular respondent. . . named in the petition." Hennesey v. Superintendent, Massachusetts Correctional Institution Framingham, 386 Mass. 848, 852 (1982). In the instant case, the inmate contends that he is entitled to immediate release from confinement because his due process rights were violated by the denial of his requests for staff assistance in preparing his defense and for the presence at the hearing of the witnesses Dr. Khan and Sgt. Grossi, the reporting officer.
The regulations promulgated by the Department of Correction have the force of law. Royce v. Commissioner of Correction, 390 Mass. 425 (1983). “Once an agency has seen fit to promulgate regulations, it must comply with those regulations” Id. at 427. 103 Code Mass. Regs. 430.14(4) states in pertinent part:
[T]he inmate shall be allowed to call and question witnesses in his/her defense, or to present other evidence, when permitting him/her to do so will not be unduly hazardous to personal safety or institutional security. The factors that the chairperson may consider when relying on an inmate’s request to call witnesses, questioning of witnesses, or offer of other documentary or physical evidence shall include, but shall not be limited to, the following:
*113 (a) Relevance;
(b) Whether the evidence is cumulative or repetitive;
(c) Hazards presented by an individual case;
(d) Unavailability of the reporting staff person or other staff person for a prolonged period of time due to illness, vacation or other authorized absence or for good cause;
(e) Failure of the inmate to provide a summary of the expected testimony of a proposed witness.
An inmate who is subjected to a loss of good time credits by the decision at a disciplinary hearing is entitled to minimal due process requirements as mandated in Wolff v. McDonnell, 418 U.S. 539, 566 (1974). This includes the right to call witnesses in the inmate’s defense as long as it is not unduly hazardous to institutional safety or correctional goals. Prison officials do have the necessary discretion to keep the hearing within reasonable limits. Real v. Superintendent, Massachusetts Correctional Institution, Walpole, 390 Mass. 399, 404 (1983), vacated, Ponte v. Real, 471 U.S. 491 (1985) on remand, 396 Mass. 1001 (1985). Prison officials may refuse to call witnesses whom they determine are irrelevant, unnecessary or hazardous. Id. at 404-05. These due process requirements are codified in the above regulations.
Prison officials have the burden of proof to show why their refusal to call a witness was not arbitrary or capricious. Ponte v. Real, supra, at 497. In Real v. Superintendent, supra, the Supreme Judicial Court stated, at 406-07:
The right to call witnesses is an important right to an accused “who obviously faces a severe credibility problem when trying to disprove the charges of a prison guard.” (Citation omitted.) To hold that the board need not state its reasons for refusal would render meaningless the prisoner’s limited right to call witnesses. (Citation omitted.) We find persuasive the requirement of the United States Court of Appeals for the Seventh Circuit that there must be some support in the administrative record to justify a decision not to call witnesses, in order to ensure that the hearing is not a charade.[9]
In this case, the reason stated by the hearing officer for the denial of Lane’s request for the presence of Dr. Khan was that the Department of Correction (DOC) disciplinary proceeding regulations apply only to inmates housed at the state’s correctional facilities and DOC employees; that Dr. Khan was a private contractor, not a DOC employee; and thus Dr. Khan was not subject to the disciplinary proceeding regulations. The hearing officer has misinterpreted the provision in 103 CMR 430.04. Said regulation provides; 103 CMR 430.00 [the body of disciplinary proceeding regulations] is “applicable to all employees and to inmates housed at all correctional institutions within the Department of Correction.” This provision merely means that the regulations to be followed for disciplinary proceedings apply to all employees and inmates at DOC institutions. It does not mean that someone who witnesses a matter and is not a DOC employee, such as a visitor (or medical service provider), may not be called as a witness at the disciplinary proceeding.
Further, as set forth above, 103 CMR 430.14(4) lists the reasons that may be considered by the hearing officer when ruling on an inmate’s request to call witnesses. The hearing officer did not state any of the permissible reasons for denying the inmate’s request to call Dr. Khan. Although the list is nonexclusive, and the hearing officer could have stated another proper reason for the denial, the only reason the officer provided was incorrect as a matter of law. Since the DOC contracts with Dr. Khan to provide medical services to the inmates, the DOC could pay him as well to be present at the hearing.
The imposition of a 100-day forfeiture of statutory good time is equivalent to a three-month prison sentence. As a predicate to that, the inmate is entitled to the presence of an eyewitness who is also the alleged victim, particularly in view of the fact that departmental regulations permit him to call such a witness. This is a matter of fundamental fairness. This unfairness is underscored when the only other eyewitness (Sgt. Grossi) is a departmental employee. As the Supreme Judicial Court has stated, the right to call witnesses is an important right to an accused "who obviously faces a severe credibility problem when trying to disprove the charges of a prison guard.” Real v. Superintendent, supra, at 406-07. I conclude that the hearing officer improperly denied Lane the right to call the witness Dr. Khan at the hearing because such denial did not comply with the DOC regulations or with due process (even the reduced level thereof which is applicable to proceedings of this nature).
Despite this conclusion, there must be some showing of prejudice before an agency’s disregard of its rules may constitute reversible error. DaLomba’s case, 352 Mass. 598, 603 (1967); Martorano v. Department of Public Utilities, 401 Mass. 257, 262 (1987). “Courts have generally recognized that, even when a regulation which is meant to protect a party is violated, the party should be unable to insist on a new proceeding when there is little possibility that the violation had any effect on the agency’s action." Note, Violations by Agencies of Their Own Regulations, 87 Harv. L. Rev 629, 634 n.24 (1974). 1 F. Cooper, State Administrative Law 271 (1965), and cases cited.
In his request for representation and/or witness form, petitioner states that Dr. Khan’s proposed testimony would be “that I did not assault him or anybody.” Even if Dr. Kahn had been present and testified at the hearing, Lane has not shown that the doctor would have testified that Lane did not spit at him. On the contrary, in an incident report dated October 21, 1986, Dr. Khan states that Lane did in fact spit at him: *114 “He spat at me striking my clinical gown with blood tinged sputum at two places. This was done while being restrained. All he had to do was to say that he was refusing medical evaluation.” Despite the fact that the incident report does not appear to benefit Lane, the inmate should have an opportunity to cross examine Dr. Kahn and perhaps elicit some exculpatory evidence. Due process requires no less. There must be more than pro forma compliance with due process. The agency’s disregard of its rule constitutes error. And it cannot be determined that the failure to call the witness Dr. Khan was not prejudicial.
As there was a dispute regarding the presence of Sgt. William Grossi at the hearing, this Court held a hearing on this issue. Both parties were directed to present evidence. The respondent presented no witnesses, but filed an affidavit of Scott Flaherty, the hearing officer. Said affidavit stated that Sgt. Grossi was not present at the outset of the hearing when the inmate was present; the inmate was removed from the hearing when he became disruptive; the hearing later resumed in the disciplinary office (apparently a different place than that in which the hearing had originally been held); and Sgt. Grossi testified at the disciplinary office. The inmate testified that Sgt. Grossi was not present at the hearing. A “log” was introduced to demonstrate that Sgt. Grossi did not sign into the unit on the date and time of the hearing. It is unclear whether the disciplinary office was within the unit and thus whether Sgt. Grossi would be required to log in when going to said office. -
I need not resolve the issue of Sgt. Grossi’s presence at the hearing. The respondent was given an opportunity, indeed, was directed to produce competent evidence to support its position that Sgt. Grossi attended the hearing. It neglected or refused to do so. This creates an inference that the evidence either does not exist or is being withheld, placing the Court in an untenable position. I am unable to resolve the dilemma; however, it is unnecessary to resolve it, in view of my resolution of this matter.
Lane also asserts that he requested the assistance of a staff member to aid him in preparing for his disciplinary hearing. He claims that a staff member would have been able to help him in gathering exculpatory evidence, interviewing witnesses and obtaining statements from witnesses. The United States Supreme Court held in Wolff v. McDonnell, supra at 570, that due process did not require that the prisoner be appointed a lay advocate unless “an illiterate inmate is involved ... or where the complexily of the issue makes it unlikely that the inmate will be able to collect- and present the evidence necessary for an adequate comprehension of the case.” This requirement is codified in 103 CMR 4.30.12(2) which provides that an inmate may be given staff assistance if he is illiterate or if the issues presented are complex. In the present case, there is no suggestion that Lane does not speak English or that he is illiterate. On the contrary, his submissions to this Court indicate that he appears to be quite literate. Further, the question at the disciplinary hearing was whether he spat at the doctor. That does not present a complex issue. Accordingly, pursuant to Wolff and the departmental regulations, petitioner Lane was not entitled to staff assistance.
Defendants have not argued that Lane is not entitled to immediate release if the 100 days of good time credit were improperly revoked. Nelson v. Commissioner of Correction, 390 Mass. 379, 386 (1983).
CONCLUSION
For the foregoing reasons, the petition for writ of habeas corpus is ALLOWED.

 That issue is whether the reporting officer, Sergeant William Grossi, was present at the disciplinary proceeding in question.

 As a result of the disciplinary proceeding, the petitioner was also sanctioned by a six-week loss of television, radio, canteen and phone privileges. These losses are not the subject of the instant petition.

 The damages claim is not appropriate in the petition for writ of habeas corpus and thus is not considered herein.

 The inmate was apparently dissatisfied with the hearing officer’s rulings and was instructed by the hearing officer to conduct himself properly. After several such instructions and the inmate’s continued disruptive behavior, the hearing officer told petitioner that he could either conduct himself appropriately or he would be returned to his cell. The inmate chose to return to his cell. The hearing thus concluded in the inmate’s absence.

 The hearing officer is permitted to consider written as well as oral evidence, see 103 CMR 430.14(2), and to draw an adverse inference from the fact that the inmate failed to dispute the allegations, see 103 CMR 430.14(3).

 The respondent does not contest the propriety of the request.

 See n.7, supra.

 103 CMR 430.04 provides: “103 CMR 430.00 [the Department of Correction regulations governing disciplinary proceedings] is applicable to all employees and to inmates housed at all correctional institutions within the Department of Correction.”

 The U.S. Supreme Court vacated the decision of Real v. Superintendent, supra, in Ponte v. Real, supra, and held that prison officials may choose to explain their decision refusing to call witnesses at the hearing or they may chose to explain it later. Said decision held, at 496:
Explaining the decision at the hearing will of, course not immunize prison officials from a subsequent court challenge to their decision, but so long as the reasons are logically revealed to prevent undue hazards to “institutional safety or correctional goals,” the explanation should meet the due process requirements of Wolff.
In Real v. Superintendent, supra, however, the Supreme Judicial Court noted that the “plaintiff only raised the issue of his due process rights protected by the United States Constitution,” id. at 401, n.4, and that no decision was made regarding whether prisoners had broader due process rights under the Massachusetts Constitution.