Brassard, J.
The plaintiff, Joseph Jordan (“Jordan”), a prisoner in the custody of the Massachusetts Department of Correction (“DOC”), brings this action against the DOC and Larry Dubois (“Dubois"), the Commissioner of the DOC, challenging a disciplinary rehearing and sanctions received in relation to a disciplinary report (95-1357). Defendants, DOC and Dubois have moved to dismiss the complaint. Jordan filed an opposition to defendants’ motion to dismiss as well as a cross motion for summary judgment. For the reasons set forth below, defendants’ motion to dismiss is ALLOWED and plaintiffs motion for summary judgment is DENIED.
BACKGROUND
Jordan is an inmate lawfully in the custody of the DOC. He began serving an eight- to ten-year sentence for kidnapping on August 18, 1992, and is currently incarcerated at MCI-Cedar Junction. Jordan also has a lengthy from and after sentence to serve. On January 16, 1996, Jordan filed the underlying complaint challenging a disciplinary hearing and sanctions received in relation to a disciplinary report (95-1357). The disciplinary report charged Jordan with producing and disseminating certain printed materials intended to cause persons outside of DOC to be threatened or harassed. On September 21, 1995, Jordan, represented by Attorney John M. Thompson was tried before the prison disciplinary board and on September 28, 1995, the disciplinary board returned guilty findings on a majority of the offenses. Consequently, Jordan forfeited 325 days of statutory good time credits and was placed in the Department Disciplinary Unit (“DDU”) on the grounds of MCI-Cedar Junction (“MCI”) for a 24 month sentence.
On August 6, 1997, the Court (J. Neel) vacated the finding and sanction of the disciplinary hearing officer because Jordan had not been provided with an investigative summary prior to the disciplinary hearing. The Memorandum and Order vacated the guilty finding and restored plaintiffs good time credits “unless and until a new hearing is held and a guilty finding made following a proceeding that comports with due process.” On August 18, 1997, Jordan was removed from DDU and placed in the West Wing Segregation Unit (“WWSU”) at MCI.
A new disciplinary hearing was scheduled and Jordan filed an Emergency Motion for an Injunction. On September 4, 1997, after a hearing, the Court (J. Neel) determined that Jordan “had possessed the investigative summary for a substantial period of time, and that his attorney’s recent receipt thereof is not grounds for delay of a rehearing for the period requested.” The Court (J. Neel) ordered that DOC postpone the hearing to a date on or after September 10, 1997, thus giving three days notice of the hearing to Jordan.
On September 5,1997, Attorney Thompson notified the disciplinary board that, due to financial obligations, he would not be able to represent Jordan at the rehearing. Subsequently, on September 8, 1997, Jordan submitted an emergency motion for a continuance seeking the opportunity to call his family to secure funds to pay for the continuation of Attorney Thompson’s representation or to secure new counsel. The disciplinary board denied Jordan’s motion for a continuance.
On September 11, 1997, with more than three days notice to Jordan, a rehearing was held on the disciplinary report. Jordan was found guilty of numerous *26 disciplinary offenses and sanctioned to two years in the DDU (with credit for time already served or approximately 21 months). The board also recommended the forfeiture of 325 days of good time credits, which was approved by the Commissioner of Correction. Jordan sought an injunction from the Court prohibiting the defendants from imposing these sanctions. On November 20, 1997, this motion was denied based on the court’s conclusion that Jordan failed to demonstrate a sufficient likelihood of success on the merits.
Jordan’s complaint cites G.L.c. 249, §4 and 42 U.S.C. §1983 as the jurisdictional bases for his claims. He alleges that the rehearing of disciplinary offense 95-1357 violated his due process rights because (1) his requests for continuances were denied; (2) his request for witnesses was denied; (3) hearsay information and unauthenticated documents were admitted into evidence; (4) the guilty finding was not based on substantial evidence; (5) he forfeited good time after his sentence expired; and (6) his equal protection rights were violated because he was placed in the DDU.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). Any inferences drawn from a pleading should be “construed as to do substantial justice." Ourfalian v. Aro Manufacturing Co., 31 Mass.App.Ct. 294, 296 (1991) citing Nader v. Citron, 372 Mass. 96, 98, 104 (1977). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Nader, supra at 98 quoting Conley v. Gibson, 255 U.S. 41, 45-46 (1957).
I. 42 U.S.C. §1983 Cause of Action:
Even if Jordan overcomes the procedural barriers imposed by the Supreme Court in Edwards v. Balisok, 520 U.S. 117 S. Ct. 1586 (1997), and Heck v. Humphrey, 512 U.S. 477 (1994), the complaint does not state a claim under 42 U.S.C §1983. To sustain a cause of action under §1983, a plaintiff must show that there has been a violation of a federally protected right. Smith v. Maloney, 635 F.Supp. 39, 42 (D.Mass. 1990). Federal due process requires that a prisoner facing disciplinary charges that may result in loss of liberty must receive “(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense; (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.” Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454 (1985), citing Wolff v. McDonnell, 418 Mass. 539, 563-67 (1974).
In this case, due process requirements were met. Jordan was provided advance written notice of the disciplinary charges and given reasonable opportunity to prepare a defense. Moreover, Jordan was given the opportunity to call those witnesses whose presence at the hearing would not pose a threat to institutional safety and compromise correctional goals. Also, the disciplinary report, an investigative summary, material from the United States Postal Service, and an affidavit submitted on plaintiffs behalf were placed into evidence. Finally, a written statement by the hearing officer outlining the evidence relied upon and the reasons for the disciplinary action was provided to Jordan. Accordingly, the prison disciplinary hearing comported with the requirements of due process; thus, Jordan fails to state a claim under 42 U.S.C. §1983.
II. Certiorari Claim under G.L.c. 249, §4:
“The remedy for failure to adhere to regulations in prison disciplinary proceedings is an action in the nature of certiorari under G.L.c. 249, §4.” Ford v. Commissioner of Corrections, 27 Mass.App.Ct. 1127, 1128 (1989). Under G.L.c. 249, §4, a court will review the record and correct only a substantial error of law which adversely affected a material right of the plaintiff. Id. The court may correct only those errors “which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public.” Id. quoting Murray v. Second Dist. Court of E. Middlesex, 389 Mass. 508, 511 (1983). Thus, this Court must determine whether the record before it shows any error of law in the DOC’s decision which adversely affected one of Jordan’s material rights. Id. Such review does not involve a de novo evidentiary hearing, nor does it involve judicial second guessing of the credibility of witnesses or the adoption of inferences. Hill v. Superintendent, Massachusetts Correctional Institute, Walpole, 392 Mass. 198, 202 (1984). Accordingly, judicial review is limited to the legal sufficiency of the evidence to support the disciplinary board’s findings. Id.
A. Request for Continuances
Jordan contends that his requests for continuances were improperly denied. Under 103 CMR 430.11(2), the disciplinary officer shall schedule a hearing before a hearing officer within a reasonable time, but not less than 24 hours after the inmate has been served with the disciplinary report and notice of the hearing. The regulation further provides that the hearing officer may continue the hearing at his discretion and that the inmate shall be entitled to one continuance for good cause provided that the request for a continuance be made at least 24 hours before the scheduled hearing. 103 CMR 403.11(2).
Jordan’s rehearing was originally scheduled for August 29, 1997. On August 26, 1997, following receipt of notice of the hearing, Jordan notified the *27 disciplinary officer that he had not been served with documentary evidence to be used against him and requested a continuance. The request for a continuance was granted and the rehearing was rescheduled for September 5, 1997.
On September 4, 1997, pursuant to a request for an injunction, the Court (J. Neel) determined that plaintiff “had possessed the investigative summary for a substantial period of time and that his attorney’s recent receipt thereof is not grounds for delay of a rehearing for the period requested.” The Court did, however, order that defendants postpone the rehearing to a date on or after September 10, 1997 and required that defendants provide Jordan with at least three days notice of the rehearing.
Pursuant to the regulations, Jordan is entitled to one continuance upon the showing of good cause. 103 CMR 430.11 (2). Jordan received this one continuance. Any further continuances are left to the discretion of the hearing officer. By denying any further continuances, the hearing officer did not abuse his discretion and accordingly, his actions comported with the requirements of 103 CMR 430.11(2).
B. Request for Witnesses
Jordan contends that he was denied the opportunity to present certain witnesses in his defense. The rights of inmates to call witnesses are "limited by the competing concerns of maintaining institutional safety and other correctional goals.” Smith, supra at 1399. “Prison officials must have the necessary discretion to keep [a disciplinary hearing] within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.” Id. citing Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Although the discretion of prison officials in such matters is undeniably broad, it is subject to judicial review for abuse. Id. Prison officials may not arbitrarily deny an inmate’s request to present witnesses and other documentary evidence. Graham v. Baughman, 772 F.2d 441, 444 (8th Cir. 1985).
Under 103 CMR 430.11(1) & (5), inmates who wish to call witnesses at a disciplinary hearing must complete a request for representation and witness form within one day of receiving it. The factors that the hearing officer may consider when ruling on an inmate’s request to call witnesses, question witnesses, or offer other documentary or physical evidence shall include, but shall not be limited to (1) whether the proffered testimony is relevant; (2) whether the testimony is cumulative or repetitive; (3) hazards presented by an individual case; (4) unavailability of the reporting staff person or other staff person for a prolonged period of time due to illness, vacation, or other good cause; and (5) failure of an inmate to provide a summary of the expected testimony of a proposed witness. 103 CMR 430.14(4).
Jordan requested permission to examine twelve witnesses at his disciplinary hearing. Eight of the witnesses requested were denied because they were neither staff nor inmates under the control of the Massachusetts DOC and the regulations do not confer subpoena power on prison disciplinary hearing officers. Additionally, the request for “any investigating law enforcement agent” was denied based on relevance, the failure to provide a summary of the expected testimony, and Jordan’s failure to specifically identify the individual. See id. Moreover, the hearing officer determined that the prison librarian, another inmate, and an unidentified computer class teacher had no evidence relevant to the charges against Jordan.
The hearing officer is afforded much discretion in determining whether to allow an inmate to present witnesses. The Court (J. Neel) previously upheld DOC’s decision not to allow these witnesses to testify at the hearing. In Lane v. Dubois, another Superior Court Judge (J. Cowin) held that the DOC’s decision not to allow an inmate to call witnesses because they were neither employees nor inmates of DOC could be an abuse of discretion. Civil Action No. 9700420, 7 Mass. L. Rptr. 111 (Norfolk Super. Ct. June 2, 1997).[1] In this case, while there may have been an abuse of discretion in not affording Jordan the opportunity to call certain witnesses, based on the strength of the evidence against Jordan (see section D of this decision), this Court concludes that the hearing officer’s denial of certain witnesses did not have any effect on the DOC’s action and therefore did not prejudice Jordan’s material rights. See Lane, supra
C. Hearsay Information and Unauthenticated Documents
Jordan asserts that hearsay information and unauthenticated documents were improperly admitted into evidence at the disciplinary hearing. Specifically, Jordan alleges that over his objections, the hearing officer accepted, considered and relied upon outdated, incorrect, and unreliable hearsay and double-hearsay, as well as unauthenticated documentary evidence and information outside of the personal knowledge of the officer reporting the offenses. Further, Jordan objects to the fact that most of the reporting officer’s testimony consisted of his verbatim reading of his written investigative summary into evidence.
To support his objection, Jordan relies on 103 CMR 430.14(5) which provides that if the inmate does not request the presence of the reporting officer at the disciplinary hearing, the hearing officer may, in his discretion, accept the reporting officer’s statements in his report as true, provided that the report is based on the officer’s eyewitness account or other personal knowledge. Further, such statements in the report may be considered by the hearing officer in making his findings pursuant to 103 CMR 430.16(1). Jordan argues that this regulation implicitly prohibits hearsay *28 and information outside of the personal knowledge of the reporting officer.
In the present case, Officer Casey, the reporting officer, was present at the rehearing and therefore subject to cross examination by Jordan. Thus, 103 CMR 430.14(5) is inapplicable. Furthermore, Jordan’s interpretation of the regulation is misplaced. 103 CMR 430.14(5) places limits on the admissibility of evidence when the reporting officer is not present and the evidence is essentially being admitted as a substitute for live testimony. The regulation neither explicitly nor implicitly places any sort of limit on the admissibility of evidence compiled by the reporting officer when the reporting officer does testify. See 103 CMR 430.14(5). Moreover, the regulations provide that the “hearing officer shall not be bound by the rules of evidence observed by the courts of the Commonwealth.” 103 CMR 430.13(3). Accordingly, Jordan’s contention that this hearsay evidence is inadmissible at a disciplinary hearing is unsupported by the regulations. See 103 CMR 430.13(3).[2]
Additionally, Jordan contends that the documentary evidence received by the reporting officer and subsequently entered into evidence at the disciplinary hearing was inadmissible hearsay. For the aforementioned reasons, this contention is without merit.
D.Guilty Finding Based on Substantial Evidence
Jordan contends that the proponent of the disciplinary report has not met his burden of proving the offense(s) by a preponderance of the evidence. See Wightman v. Superintendent of Massachusetts Correctional Institute, 19 Mass.App.Ct. 442, 445 (1985). Casey, the reporting officer, had the burden of proving by a preponderance of the evidence, that Jordan created and reproduced the offending documents, attempted to disrupt the orderly operation of MCI-Shirley, and attempted to or did threaten another inmate, staff member, or visitor.
The hearing officer has the “exclusive function” of weighing the credibility of the witnesses and resolving factual disputes between an inmate’s testimony and that of the correction officer. Cepulonis v. Commissioner of Correction, 15 Mass.App.Ct. 292, 295 (1983). A court may not displace the hearing officer’s choice between two conflicting views. Id. In this case, the hearing officer heard live testimony from the reporting officer and Jordan. Additionally, numerous documents were admitted into evidence including materials found in Jordan’s cell,[3] documents provided by the United States Postal Inspector, and material provided by the Assistant District Attorney. The evidence was sufficient to support a guilty finding.
E.Good Time Forfeiture
Jordan asserts that his statutory good time forfeiture was improper because it was imposed more than two months after his “A sentence” expired. Jordan has a lengthy from and after sentence. Jordan alleges that since the alleged infraction occurred during the “A sentence,” and the A sentence expired prior to the forfeiture of good time credits, the forfeiture of good time credits could not occur during a subsequent term of incarceration. This argument, having been rejected by courts in the Commonwealth, is without merit.[4]
There is no dispute that both the disciplinary offense that gave rise to the forfeiture of good time credits and the guilty finding occurred while Jordan was serving his “A sentence.” The fact that the official forfeiture did not take place until the Commissioner’s approval is of no consequence. See Patrick v. Commissioner of Correction, 352 Mass. 666, 669 (1967) (under prior version of G.L.c. 127, §129, forfeiture of good time credits was incurred at the time of the incident upon which the forfeiture was based, even though the forfeiture was officially approved at a later date). Accordingly, the forfeiture of Jordan’s statutory good time credits was lawful.
E. Equal Protection
Jordan contends that his placement in the DDU violated his equal protection rights because there is no DDU for female inmates in the Massachusetts prison system. Equal protection analysis under Massachusetts law is the same as under federal law. MacInnes v. Commissioner of Public Welfare, 412 Mass. 790, 798 (1992), quoting Dickerson v. Attorney General, 396 Mass. 740, 743 (1986). To establish an equal protection claim, a plaintiff must show that a statute, regulation, or government action discriminates against those similarly situated. Rubinovitz v. Rogato, 60 F. 3d 906, 910 (1st Cir. 1995); Buchanan v. Director of the Division of Employment Security, 393 Mass. 329, 334 (1984). Once the plaintiff establishes this, the state must present justification for its discrimination. United States v. Virginia, 116 S.Ct. 2264, 2275 (1996). If the state discriminates against a protected class, the state must meet a rigorous standard in justifying its action. See id.
This Court need not decide whether DOC is justified in its actions because male and female inmates are not similarly situated. Dupont v. Wyzanski, Civil No. 96-5187 (Suffolk Super. Ct. December 23, 1997).[5] Plaintiff fails to satisfy this threshold requirement and therefore cannot establish a violation of his equal protection rights.
F.Other Claims
This Court has considered additional, related claims made by Jordan and concludes that they are without merit.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s motion to dismiss be ALLOWED and plaintiffs motion for summary judgment be DENIED.

 In Lane, the reason stated by the hearing officer for the denial of Lane’s request for the presence of a certain witness *29 was that the DOC disciplinary proceeding regulations apply only to inmates housed at the state’s correctional facilities and DOC employees. The Court (J. Cowin) held that the hearing officer misinterpreted the provision in 103 CMR 430.04 which provides: “103 CMR 430.000 [the body of disciplinary proceeding regulations] is applicable to all employees and to inmates housed at all correctional institutions within [DOC]." The Court held that this provision means that the regulations to be followed for disciplinary proceedings apply to all employees and inmates at DOC institutions. It does not mean that someone who witnesses a matter and is not a DOC employee may not be called as a witness at the disciplinary hearing. Supra.

 Defendants rely on 103 CMR 430.15(4) which provides that a hearing officer can consider oral and written hearsay evidence. This regulation applies to informant information. This Court need not decide this issue based on this regulation in light of the fact that there are other regulations that are more applicable. See 103 CMR 430.13(3).

 Included among the items found in Jordan’s cell were: (1) an envelope addressed to Window Tech, USPS Clerk, Springfield MA. 021102, with a return address of Gary Hanks, Box 1218, Shirley, MA 01464-1218; (2) an envelope addressed to Window Tech, USPS Clerk, Westfield, MA. 01085, with a return address of Joseph McKay, Box 1218, Shirley, MA 01464 (3) an envelope addressed to Old Colony Correctional Center, 1 Administration Road, Attention Librarian; (4) a letter and envelope addressed to MCI-Gardner; and (5) a list of white supremacy groups.

 See Christian v. Maloney, Civil No. 97-1904 (Norfolk Super. Ct. Dec. 17, 1997) (“forfeiture occurs at the time of the offense for which the penalty is imposed is committed”).

 See Keenan v. Smith, 100 F. 3d 644, 650 (8th Cir. 1996) (defendant did not deny female prisoners equal protection by providing female prisoners different educational programs because female and male prisoners were not similarly situated); Women Prisoners of the District of Columbia Department of Corrections v. D.C., 93 F.3d 910, 927 (D.C. Cir. 1996), cert. denied, 117 S.Ct. 1552(1997) (defendant did not deny female prisoners equal protection by providing female prisoners different work, recreational and religious programs because female and male prisoners were not similarly situated); State v. Emery, 257 A. 2d 878, 880 (Me. 1976) (defendant did not deny male prisoners equal protection by subjecting male prisoners to harsher punishment than female prisoners for prison escapes; male and female inmates are not similarly situated for purposes of punishment for escapees, because the facility at which male inmates were incarcerated was much more secure than for female inmates).